### 3360. PATRICK *v.* HENDERSON.

The evidence, with all reasonable deductions and inferences therefrom, did not absolutely demand the verdict for the defendant, and it was error to direct the verdict.

DECIDED JANUARY 15, 1912.

Trover; from city court of Monticello—Judge Thurman. March 25, 1911.

*A. Y. Clement,* for plaintiff. *Greene F .Johnson,* for defendant.

HILL, C. J.   Patrick sued Henderson in trover, to recover "one black horse mule 5 years old, medium size." After hearing the evidence the trial judge directed a verdict for the defendant; and the plaintiff excepted. The facts are as follows: On January 10, 1906, Lucian Benton sold the mule in question to William Harris, taking therefor a purchase-money note reserving title, which was duly recorded. This note is credited with a payment of $104.71, dated October 28, 1907. On October 24, 1908, Benton transferred the note, after maturity, to Patrick, with Benton's right and title to the mule. Some time in the spring of 1908 Harris, without the knowledge or consent of Benton, exchanged the mule to Jones, for a horse, and gave a mortgage on the horse to Phillips. Harris, having traded the mule for a horse, and having the latter in his possession, executed to Benton a note for $104.02, with a reservation of title to the horse in Benton, and Benton transferred this note, with the reservation contract, to Patrick. Jones, to whom Harris traded the mule for the horse, sold the mule to Henderson. Subsequently the horse was sold by Phillips under his mortgage, and bought by Patrick for $69. Patrick, claiming title to the mule, brought the suit against Henderson. When the deputy sheriff went to serve bail process on Henderson, he did not find the mule in Henderson's possession, but Henderson told him that "he could get the mule all right" and that he (Henderson) would go to him the next day and settle the matter; whereupon the officer, with the consent of Patrick, did not execute the process. Henderson failed to produce the mule or to settle the case. The value of the mule was proved to be at least $200, and that of the horse $69.

It was contended by the defendant that as Benton had transferred the purchase-money note reserving title, after maturity, to Patrick, the transferee had no greater rights than the transferor, and that as the evidence showed that Benton had taken the note for the horse in lieu of the note for the mule, the title to the mule was lost, and therefore Patrick could not recover the mule from Henderson. It was also contended that the evidence showed that Henderson did not have possession, custody, or control of the mule at the time of the filing of the suit and when the demand was made on him for the mule, and he had not converted the mule, and that for this reason also there could be no recovery. The judge took this view of the evidence and directed a verdict for the defendant.

We do not think the evidence, with all reasonable deductions or inferences therefrom, was so clear and unequivocal on both points as to demand the verdict for the defendant. Unquestionably Patrick had no greater title to the mule than Benton had, but as Benton's contract reserving title to the mule was duly recorded, he had title until the note was paid or in some way settled. If Benton accepted the note for the horse with reservation of title, in lieu of the note for the mule with reservation of title, which he subsequently transferred to Patrick, and it was so understood by both Benton and Patrick, the right to recover the mule was lost; for the horse was substituted for the mule. But if the jury could have reasonably inferred from the evidence that Benton was simply endeavoring to protect himself and his transferee as to the mule transaction, the mule being more valuable than the horse and having been sold by Harris, and that the horse note was collateral security for the mule note, then Patrick would still have title to the mule. In our opinion the evidence is not so clear and unequivocal on this point as to demand the finding that the horse note was taken, not as collateral, but as a substitution for the mule note; and this question should have been submitted to the jury. Civil Code (1910), § 5926; *Broughton* v. *Aiken*, 7 *Ga. App.* 318 (66 S. E. 809).

We think also that the question whether the defendant had possession, custody, or control of the mule was in some doubt, under the evidence. Two or three days before the suit was brought he was seen to have the mule in his possession, and on the night when the officer, in company with the plaintiff, went to serve bail-process, he admitted that, while he did not have the mule in his possession at that time, "he could get it," and agreed that "if they would give him until to-morrow, he would settle it." The jury might have inferred that while he did not have the mule in his actual possession, it was where he could get it, or that he was playing for time to eloign the mule so as not to have it forthcoming. Even if he did not then have possession, custody, or control of the mule, but had previously gotten possession of it with legal knowledge of Benton's recorded title, and with this knowledge had disposed of it, this was a conversion so far as the superior right of Benton was concerned, if he had not lost his right to the mule in taking the note for the horse. *Miller* v. *Wilson*, 98 *Ga.* 567 (25 S. E. 578,

58 Am. St. R. 319); *Merchants & Miners Transportation Co.* v. *Moore,* 124 *Ga.* 482 (52 S. E. 802). The case should have been sent to the jury, and the direction of a verdict for the defendant was erroneous.                                   *Judgment reversed.*